**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **PAMELA ROCK,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION NO:** |
| **v.** ) | |
| ) | |
| **EQUIFAX INFORMATION** ) | |
| **SERVICES, LLC, EXPERIAN** ) | |
| **INFORMATION SOLUTONS, INC.,** ) | |
| **and TRANS UNION, LLC** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## COMPLAINT

1.      This is an action for damages brought by an individual consumer, Pamela Rock, against Equifax Information Services, LLC, Experian Information Solutions, Inc., and Trans Union, LLC for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* (the "FCRA").

## PRELIMINARY STATEMENT

2.      Ms. Rock is the victim of identity theft.

3.      More than 26 million persons – 10% of all adult Americans – are victims of identify theft each year.[1]

4.      This lawsuit is based on Defendants' repeated failure to comply with federal law requirements relating to credit reporting and the consequences of identity theft.

5.      When Congress enacted the FCRA it found that the "banking system is dependent upon fair and accurate credit reporting.  Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system."  15 U.S.C. § 1681(a)(1).

6.      Congress recognized that CRAs "have assumed a vital role in assembling and evaluating consumer credit and other information on consumers."  15 U.S.C. § 1681(a)(3).  Therefore, Congress found that there "is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy."  15 U.S.C. § 1681(a)(4).

---

[1] Victims of Identity Theft, 2016, U.S. Dept. of Justice, Bureau of Justice Statistics. January 2019, NCJ 251147.

7.      The FCRA requires that when a CRA prepares a credit report, it must "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."  15 U.S.C. § 1681e(b).

8.      Consumers can submit disputes to CRAs regarding the accuracy or completeness of any information in their credit file.  Upon receipt of the dispute, the FCRA requires that the CRA conduct a reasonable reinvestigation of any information that is disputed by a consumer to determine if the information is accurate.  The CRA must notify the source of the disputed information about the consumer's dispute. The CRA must provide the source with all relevant information received from the consumer.  The CRA must review and consider all relevant information provided by the consumer in conducting the reinvestigation.  If information cannot be verified as accurate, the CRA "shall . . . promptly delete that item of information from the file of the consumer[.]" 15 U.S.C. § 1681i(a)(5)(i). The CRA must complete the reinvestigation within 30 days, or within 45 days if the dispute is based on a free annual credit report.  The CRA must send the consumer written results of the reinvestigation and a credit report that is based on the consumer's file as that file is revised as a result of the reinvestigation.  15 U.S.C. § 1681i(a).

9.     The FCRA also requires that CRAs have reasonable procedures to prevent the reappearance of previously deleted information in a consumer's file. 15 U.S.C. § 1681i(a)(5)(C). It also provides for specific actions that a CRA must take if it seeks to reinsert previously deleted information in a consumer's file. 15 U.S.C. § 1681i(a)(5)(B). Previously deleted information can only be reinserted in a file if the CRA first receives a certification from the furnisher of information that the information is complete and accurate. And the CRA must notify the consumer in writing of the reinsertion no later than five business days after the CRA reinserts the previously deleted information. 15 U.S.C. § 1681i(a)(5)(B).

10.    The FCRA also provides special protections for victims of identity theft. When a consumer disputes any information in their credit report that resulted from an alleged identity theft, the CRAs must block (delete) the reporting of that information within four business days, if the consumer provides: (1) appropriate proof of the identity of the consumer; (2) a copy of an identity theft report; (3) the identification of such information by the consumer; and (4) a statement by the consumer that the information is not information relating to any transaction by the consumer. 15 U.S.C. § 1681c-2(a).

11.    To protect consumers' privacy, the FCRA provides that CRAs may only furnish a credit report to a person "which it has reason to believe … intends to

use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished." 15 U.S.C. § 1681b(a).

12.     A CRA must refuse to furnish a consumer report when it has reason to believe that the inquiry for the report is not related to a legitimate transaction of the consumer.

## JURISDICTION AND VENUE

13.     This Court has federal question jurisdiction over Plaintiff's FCRA claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

14.     Venue is proper in this Court under 28 U.S.C. § 1391 as Plaintiff resides in this district, Defendant Equifax Information Services, LLC, is headquartered in this district, and all Defendants regularly conduct business in this district, including contracting to supply goods and services in this district.

## PARTIES

15.     Ms. Rock is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

16.     Defendant Equifax is consumer reporting agency as defined by the FCRA, 15 U.S.C. § 1681a(f), and it conducts substantial and regular business activities in this judicial district.

17.    Defendant Experian is consumer reporting agency as defined by the FCRA, 15 U.S.C. § 1681a(f), and it conducts substantial and regular business activities in this judicial district.

18.    Defendant Trans Union is a consumer reporting agency as defined by the FCRA, 15 U.S.C. § 1681a(f), and it conducts substantial and regular business activities in this judicial district.

## FACTUAL ALLEGATIONS

19.    In 2020, Ms. Rock discovered that a woman in Charleston, South Carolina had stolen her identity, including her social security number and other identifying information.  Over and over again, the thief applied for mortgages, credit cards, and other credit using Ms. Rock's identity.

20.    Ms. Rock does not live in Charleston, South Carolina and has never lived in South Carolina.

21.    In October 2020, Ms. Rock filed an identity theft police report in Dunwoody, Georgia, where she resides.  The report explained that Ms. Rock was the victim of identity theft:

> Ms. Rock advised that back in February, she was notified that someone in Charleston had utilized her name, date of birth, and social security number in an attempt to obtain a medical loan for a cosmetic surgery in Charleston, South Carolina. The loan was denied, and Ms. Rock did not make a report at that time, choosing to freeze her credit accounts instead.

……….

Ms. Rock is not sure how her information was compromised. She is currently working with Capital One's fraud department to obtain pictures of the documents used to obtain the credit card. She was provided a fraud packet, via email, and a case number with information on how to obtain a copy of the report. Ms. Rock believes the suspect is the same person, as each of the fraudulent attempts occurred in the Charleston, South Carolina area.

22.     On November 16, after learning more about the identity thief, another identity theft police report was filed in Charleston, South Carolina, where the identity thief was located:

On 11/16/2020 at approximately 1000 hours, I was contacted by Det. Ethan Taffar with the Dunwoody Police Department (GA). Det. Taffar advised the victim, Pamela Rock, filed an incident report with their agency on 10/28/2020 (20-005196). Mrs. Rock advised an unknown suspect was using her personal identifying information (PII) to obtain loans and credit cards in her name. Det. Taffar provided me with several documents including their incident report and the credit reports of Mrs. Rock. The documents showed the suspect purchased a vehicle for $36,056 on 10/1/2020 from 1539 Savannah Hwy (Rick Hendrick Honda). Mrs. Rock also did an internet search of phone number 404-792-0620 and discovered the name Felicia Baker associated with the number. The address 1007 Barbados Way Charleston, SC 29414 is associated with a Felicia Lyles per RMS. I was able to obtain the video surveillance from Rick Hendrick Honda. I spoke with Mrs. Rock who indicated she is willing to prosecute the individual responsible for using her PII to open the accounts. This case will be pending active for further investigation.

23.     After filing the Charleston police report, Ms. Rock's almost never-ending saga to get the CRAs to comply with their legal obligations began.

Ms. Rock's Experience With Equifax

24.     On November 17, Ms. Rock sent via certified mail a dispute letter to

Equifax:

> I am writing this letter to dispute several accounts and inquiries
> on my credit report since January 2020 and these accounts and
> inquiries belong to her. A woman in Charleston, South Carolina
> has stolen my social security number and impersonated me since
> January 2020. She has added her address (1007 Barbados Way
> Charleston, SC 29412-8648) and employer (Artistic Technology
> LLC) to my credit report. Neither the address nor the employer
> belong to me.
>
> There is an active police investigation that was opened on
> October 28, 2020 with Detective Jackson in Charleston, SC
> leading the case and collaborating with Detective Ethan Taffar in
> Dunwoody, GA. I have enclosed the police report for your
> review. Please contact Detective Jackson at 843-870-4287 and
> Detective Ethan Taffar at 678-382-6938 if you need more
> information on identity theft.
>
> I would like all the fraudulent inquiries and accounts removed
> from my credit report as well as the Charleston address and the
> Artistic Technology employer. I have listed the accounts and
> inquiries below and also included a copy of my credit report with
> the inquiries circled.
>
> In addition to removing those accounts, I have record of placing
> a security freeze on my credit in late January 2020 and would
> like to understand how the security freeze was removed without
> my knowledge.

25.     In the dispute letter, Ms. Rock provided Equifax with a list of the

fraudulent accounts and inquiries.

26.    Each of these inquiries represented an instance in which Equifax furnished Ms. Rock's credit report in connection with transactions that did not involve Ms. Rock, including transactions initiated by the identity thief.

27.    Each of these inquiries represents an instance in which Equifax furnished Ms. Rock's private and confidential information to third parties without her consent.

28.    These inquiries misstate Ms. Rock's credit history and negatively impact her credit score.

29.    She also provided Equifax with a copy of her credit report, the identity theft police report, her driver's license, and a bill that contained her address.

30.    Equifax received Ms. Rock's dispute.

31.    Equifax did not conduct a reasonable reinvestigation into some or all of Ms. Rock's disputes.

32.    Equifax did not reinvestigate some or all of the disputed accounts, and did not reinvestigate the disputed inquiries at all.

33.    Equifax has long been on notice that the FCRA requires it to reinvestigate disputed inquiries.

34.    The plain language of the statute requires a reasonable reinvestigation of "the completeness or accuracy of *any item* of information contained in a

consumer's file" that is disputed by the consumer. 15 U.S.C. § 1681i(a)(1)(A)

(emphasis added).

35. Regulatory guidance from the Federal Trade Commission further

reinforced the obligations for CRAs to reinvestigate disputed inquiries:

> When a CRA receives a dispute from a consumer alleging that
> an inquiry that appears in his/her file was not made by a person
> who had a permissible purpose for obtaining the consumer
> report, and those allegations are supported by the CRA
> investigation, the CRA has two options. It may either delete the
> inquiry as inaccurate, or amend the file to make the item
> 'complete' by reflecting clearly that the inquiry was generated
> by a party who did not have a permissible purpose to obtain a
> consumer report on the consumer.

*40 Years of Experience with the Fair Credit Reporting Act: An FTC Staff Report*

*with Summary of Interpretations*, Federal Trade Commission, 2011 WL 3020575, at

\*69 (2011).

36. This Court has also ruled that Equifax must reinvestigate disputed

inquiries:

> More than simply comporting with the plain language of the
> statute, [requiring reinvestigation of inquiry disputes] best serves
> to advance the purpose of FCRA's reinvestigation
> requirements—ensuring the accuracy of the information used by
> creditors to determine a consumer's creditworthiness. As the
> Eleventh Circuit has noted, the standard of accuracy imposed by
> the FCRA 'should be interpreted in an evenhanded manner
> toward the interests of both consumers and potential creditors in
> fair and accurate credit reporting.' The interests of consumers
> and potential creditors are best served by deletion of hard

> inquiries that Equifax itself admits 'misstate[ ]' the consumer's credit history. Consumer's credit scores are negatively impacted by fraudulent or inaccurate credit inquiries, and creditors are provided with an inaccurate portrait of the consumer's credit history. The only entity that benefits is Equifax, which does not have to expend resources reinvestigating disputed credit inquiries.

*Steed v. Equifax*, 2016 WL 7888039, at *4 (N.D. Ga. Aug. 31, 2016) (*citing Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1158 (11th Cir. 1991)).

37.     Despite all of this notice, Equifax has made a calculated business decision not to reinvestigate consumer disputes of fraudulent inquiries.

38.     As a result of this calculated business decision by Equifax, it did not reinvestigate or delete the disputed fraudulent inquiries.

39.     On December 8, Ms. Rock obtained another copy of her Equifax report.

40.     Equifax had failed to remove or block a SET Financial account, it had added a new fraudulent US Bancorp account to the report, and it had failed to remove Ms. Rock's disputed inquiries.

41.     Equifax also had failed to remove the identity thief's Charleston, South Carolina address, as well as the identity thief's employer's name, Artistic Technology.

42.     In early January 2021, Ms. Rock sent another dispute to Equifax via certified mail:

> I am writing to dispute the following accounts on my credit report: Set Financial, Ally Financial, and US Bank. I've already disputed some of these accounts before, and some of the others are accounts that are newly appearing on my credit report. I am also disputing all of the hard inquiries on my report, the 1007 Barbados Way, Charleston, South Carolina address, and the Artistic Technology LLC entry on my report. These accounts and this information are the result of identity theft and I'd ask that you remove them from my credit report. A woman in Charleston, South Carolina stole my identity and was recently arrested for identity theft. I've attached copies of the police reports. Detective Jackson with the Charleston, SC police department is collaborating with Detective Ethan Taffar with the Dunwoody, GA police department on the case. Please contact Detective Jackson at 843-870-4287 and Detective Ethan Taffar at 678-382-6938 if you need more information on the identity theft.

43.    In this second dispute, Ms. Rock again sent to Equifax a copy of her credit report, the identity theft police reports, her driver's license, and a bill containing her address.

44.    Equifax received Ms. Rock's dispute.

45.    Equifax did not conduct a reasonable reinvestigation into some or all of Ms. Rock's disputes.

46.    Equifax did not reinvestigate some or all of the disputed accounts and inquiries at all.

47.     On or about January 16, Equifax sent Ms. Rock a letter notifying her that it was unable to locate her credit file in its database, and it asked her to send it identifying documents.  Of course, Ms. Rock had already done so several times.

48.     On about that same day, Equifax seemingly reversed course and sent Ms. Rock a letter informing her that it had received her request to block the fraudulent information, and it was not blocking the accounts.  Instead, it explained, it would be contacting each source of information to verify the information the source had reported.  It told Ms. Rock that she should receive the results of its investigation within thirty days.

49.     Nearly a month later, Equifax sent Ms. Rock another letter.  This February 12, 2021 letter was nearly identical to Equifax's January 16th letter: inexplicably, it again told Ms. Rock that it was not blocking the information and it again informed her that it would contact each source directly to verify the information reported, and Ms. Rock should receive the investigation results within 30 days.

50.     Now, more than four months after Ms. Rock notified Equifax of the identity theft, and after multiple disputes including two identity theft police reports with the detectives' contact information, Equifax still has not fully reinvestigated the

inaccurate information and removed from Ms. Rock's credit report all of the identity

thief's information.

<u>Ms. Rock's Experience With Experian</u>

51.   On November 17, Ms. Rock sent via certified mail a dispute letter to

Experian:

> I am writing this letter to dispute several accounts and inquiries on my credit report since January 2020 and these accounts and inquiries belong to her. A woman in Charleston, South Carolina has stolen my social security number and impersonated me since January 2020. She has added her address (1007 Barbados Way Charleston, SC 29412-8648) and employer (Artistic Technology LLC) to my credit report. Neither the address nor the employer belong to me.
>
> There is an active police investigation that was opened on October 28, 2020 with Detective Jackson in Charleston, SC leading the case and collaborating with Detective Ethan Taffar in Dunwoody, GA. I have enclosed the police report for your review. Please contact Detective Jackson at 843-870-4287 and Detective Ethan Taffar at 678-382-6938 if you need more information on identity theft.
>
> I would like all the fraudulent inquiries and accounts removed from my credit report as well as the Charleston address and the Artistic Technology employer. I have listed the accounts and inquiries below and also included a copy of my credit report with the inquiries circled.
>
> In addition to removing those accounts, I have record of placing a security freeze on my credit in late January 2020 and would like to understand how the security freeze was removed without my knowledge.

52.     In the dispute letter, Ms. Rock provided Experian with a list of the fraudulent accounts and inquiries.  She also provided it with a copy of her credit report, the identity theft police report, her driver's license, and a bill that contained her address.

53.     Each of the disputed inquiries represented an instance in which Experian furnished Ms. Rock's credit report in connection with transactions that did not involve Ms. Rock, including transactions initiated by an identity thief.

54.     Each of these inquiries represents an instance in which Experian furnished Ms. Rock's private and confidential information to third parties without her consent.

55.     These inquiries misstate Ms. Rock's credit history and negatively impact her credit score.

56.     Experian received Ms. Rock's dispute.

57.     Experian did not conduct a reasonable reinvestigation into some or all of Ms. Rock's disputes.

58.     Experian did not reinvestigate some or all of the disputed accounts and inquiries at all.

59.     Experian did not respond to Ms. Rock's dispute.

60.     On December 31, Ms. Rock obtained a copy of her Experian credit report from www.annualcreditreport.com.

61.     Ms. Rock discovered that Experian had failed to delete the identity thief's Charleston address from her credit report.  She also discovered that the report contained a new fraudulent account from US Bancorp, and Experian had failed to remove several fraudulent inquiries that she had disputed.

62.     In early January 2021, Ms. Rock sent another dispute to Experian via certified mail:

> I am writing to dispute the US Bank and Ally Financial accounts on my credit report.  I am also disputing all of the hard inquiries on my report, the 1007 Barbados Way, Charleston, South Carolina and 1007 Carbados Way, Saint George, South Carolina addresses, the (843) 304-0545 phone number, and the Artistic Technology LLC entry on my report.  These accounts and this information are the result of identity theft and I'd ask that you remove them from my credit report.  I've already disputed before, and new accounts are appearing on my credit report.  A woman in Charleston, South Carolina stole my identity and was recently arrested for identity theft.  I am attaching copies of the police reports.  Detective Jackson with the Charleston, SC police department is collaborating with Detective Ethan Taffar with the Dunwoody, GA police department on the case.  Please contact Detective Jackson at 843-870-4287 and Detective Ethan Taffar at 678-382-6938 if you need more information on the identity theft.

63.     In this second dispute, Ms. Rock again sent to Experian a copy of her credit report, the identity theft police reports, her driver's license, and a bill containing her address.

64.     Experian received Ms. Rock's dispute.

65.     Experian again did not conduct a reasonable reinvestigation into some or all of Ms. Rock's disputes.

66.     Experian again did not reinvestigate some or all of the disputed accounts and inquiries at all.

67.     On January 11, Ms. Rock received a new copy of her Experian report.

68.     Experian had, once again, failed to remove the identity thief's Charleston address, it had failed to remove or block the US Bancorp account, and it had failed to remove the inquiries Ms. Rock had disputed.

69.     On January 15, Ms. Rock received an email from Experian.  Experian told Ms. Rock that it had received her identity theft dispute, but it needed validation that the identity theft police report had been filed, and it asked her to upload the information to www.experian.com/upload.

70.     Although Ms. Rock could not understand why Experian needed the validation since the police report that she submitted came from the police department, had been printed by a police department employee, was dated, and had

a file number, Ms. Rock re-submitted the identity theft police reports through Experian's website.

71.    On January 23, Experian notified Ms. Rock that her dispute results were ready to view.  In its new report, Experian still failed to delete the identity thief's Charleston address and the fraudulent inquiries.

72.    Now, more than four months after Ms. Rock notified Experian of the identity theft, and after multiple disputes including two identity theft police reports with the detectives' contact information, Experian still has not fully reinvestigated the inaccurate information and removed from Ms. Rock's credit report all of the identity thief's information.

Ms. Rock's Experience with Trans Union

73.    On November 17, Ms. Rock sent via certified mail a dispute letter to Trans Union:

> I am writing this letter to dispute several accounts and inquiries on my credit report since January 2020 and these accounts and inquiries belong to her. A woman in Charleston, South Carolina has stolen my social security number and impersonated me since January 2020. She has added her address (1007 Barbados Way Charleston, SC 29412-8648) and employer (Artistic Technology LLC) to my credit report. Neither the address nor the employer belong to me.
>
> There is an active police investigation that was opened on October 28, 2020 with Detective Jackson in Charleston, SC leading the case and collaborating with Detective Ethan Taffar in

18

Dunwoody, GA. I have enclosed the police report for your review. Please contact Detective Jackson at 843-870-4287 and Detective Ethan Taffar at 678-382-6938 if you need more information on identity theft.

I would like all the fraudulent inquiries and accounts removed from my credit report as well as the Charleston address and the Artistic Technology employer. I have listed the accounts and inquiries below and also included a copy of my credit report with the inquiries circled.

In addition to removing those accounts, I have record of placing a security freeze on my credit in late January 2020 and would like to understand how the security freeze was removed without my knowledge.

74.    In the dispute letter, Ms. Rock provided Trans Union with a list of the fraudulent accounts and inquiries.  She also provided it with a copy of her credit report, the identity theft police report, her driver's license, and a bill that contained her address.

75.    Each of these inquiries represented an instance in which Trans Union furnished Ms. Rock's credit report in connection with transactions that did not involve Ms. Rock, including transactions initiated by identity thieves.

76.    Each of these inquiries represents an instance in which Trans Union furnished Ms. Rock's private and confidential information to third parties without her consent.

77.   These inquiries misstate Ms. Rock's credit history and negatively impact her credit score.

78.   Trans Union received Ms. Rock's dispute.

79.   Trans Union did not conduct a reasonable reinvestigation into some or all of Ms. Rock's disputes.

80.   Trans Union did not reinvestigate some or all of the disputed accounts and inquiries at all.

81.   On November 25, Trans Union sent Ms. Rock the results of its reinvestigation.

82.   Trans Union had removed the fraudulent Lending Point and SET Financial accounts, as well as the identity thief's Charleston address.  However, Trans Union had failed to remove the fraudulent American Honda Financial account, and the reinvestigation results contained no mention that it had even been reinvestigated.

83.   On December 3, Ms. Rock obtained a new copy of her Trans Union report.

84.   On this new credit report, Trans Union had reinserted the previously deleted Charleston address.  The report also still contained the fraudulent American Honda Financial account.

85.     Trans Union did not provide Ms. Rock with a written notice that the disputed and deleted information had been reinserted into her file.

86.     Trans Union did not provide Ms. Rock with a written that included the name and address of the source of the reinserted information.

87.     Trans Union did not provide Ms. Rock with a written notice that she had a right to add a statement to her consumer file disputing the accuracy or completeness of the disputed information that had been reinserted.

88.     Prior to reinserting the disputed information into Ms. Rock's file, Trans Union did not obtain a certification from the source of the information that it was accurate.

89.     In early January 2021, Ms. Rock sent another dispute to Trans Union via certified mail:

> I am writing to dispute the following accounts on my credit report: American Honda Finance, US Bank, and Ally Financial. I've already disputed some of these accounts before, and some of the others are accounts that are newly appearing on my credit report. I am also disputing all of the regular inquiries on my report (other than Capital One from 6/5/19), the 1007 Barbados Way, Charleston, South Carolina address, and the Artistic Technology LLC and Athletica entries on my report. These accounts and this information are the result of identity theft and I'd ask that you remove them from my credit report. A woman in Charleston, South Carolina stole my identity and was recently arrested for identity theft. I am attaching copies of the police reports. Detective Jackson with the Charleston, SC police department is collaborating with Detective Ethan Taffar

> with the Dunwoody, GA police department on the case.  Please contact Detective Jackson at 843-870-4287 and Detective Ethan Taffar at 678-382-6938 if you need more information on the identity theft.

90.    In this second dispute, Ms. Rock again sent to Trans Union a copy of her credit report, the identity theft police reports, her driver's license, and a bill containing her address.

91.    Trans Union received Ms. Rock's dispute.

92.    On or about February 1, 2021, Ms. Rock received a copy of the reinvestigation results from Trans Union.

93.    The new report still contained the identity thief's phone number and many of the fraudulent inquiries. Trans Union had, however, removed the fraudulent American Honda Finance account, as well as the identity thief's employer, Artistic Technologies.

94.    Now, more than four months after Ms. Rock notified Trans Union of the identity theft, and after multiple disputes including two identity theft police reports with the detectives' contact information, Trans Union still has not fully reinvestigated the inaccurate information and removed from Ms. Rock's credit report all of the identity thief's information.

## FIRST CLAIM FOR RELIEF

### (against Experian, Equifax, and Trans Union)

### (15 U.S.C. § 1681i(a))

95.     Plaintiff re-alleges and incorporates all other factual allegations set forth in this Complaint.

96.     After Plaintiff sent each of her disputes, Experian, Equifax, and Trans Union violated 15 U.S.C. § 1681i(a)(1) by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information or delete the item from Plaintiff's credit file.

97.     After Plaintiff sent each of her disputes, Experian, Equifax, and Trans Union violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiff.

98.     After Plaintiff sent each of her disputes, Experian, Equifax, and Trans Union violated 15 U.S.C. § 1681i(a)(5) by failing to promptly delete the disputed inaccurate information from Plaintiff's credit file or modify the items of information upon a lawful reinvestigation.

99.     As a result of their violations of 15 U.S.C. § 1681i(a)), Plaintiff has suffered, and continues to suffer, actual damages, lost opportunity to receive credit,

economic loss, damage to reputation, reduction in credit score, invasion of privacy, emotional distress, and interference with normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury.

100.   The violations by Experian, Equifax, and Trans Union were willful, rendering Experian, Equifax, and Trans Union liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, Experian, Equifax, and Trans Union were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

101.   Plaintiff is entitled to recover attorney fees pursuant to 15 U.S.C. §1681o(a) or, alternatively, 15 U.S.C. 1681o(a).

## SECOND CLAIM FOR RELIEF

### (against Experian, Equifax, and Trans Union)

### (15 U.S.C. § 1681c-2)

102.   Plaintiff re-alleges and incorporates all other factual allegations set forth in this Complaint.

103.   Equifax, Experian, and Trans Union violated Section 1681c-2(a) by failing to block the fraudulent accounts after receiving Ms. Rock's disputes that explained the victim of identity theft, and which included: (1) police reports; (2)

contact information for the detectives; and (3) and two forms of government-issued photo identification.

104. Equifax, Experian, and Trans Union violated Section 1681c-2(b) by failing to notify the furnishers that the accounts may be the result of identity theft, that identity theft reports had been filed, that a block has been requested, and the effective date of the block.

105. As a result of their violations of 15 U.S.C. § 1681c-2, Plaintiff has suffered, and continues to suffer, actual damages, lost opportunity to receive credit, economic loss, damage to reputation, reduction in credit score, invasion of privacy, emotional distress, and interference with normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury.

106. The violations by Trans Union, Experian and Equifax were willful, rendering them liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, Trans Union, Experian and Equifax were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

107. Plaintiff is entitled to recover attorney fees pursuant to 15 U.S.C. §1681o(a) or, alternatively, 15 U.S.C. 1681o(a).

### THIRD CLAIM FOR RELIEF

### (against Experian, Equifax, and Trans Union)

**(15 U.S.C. § 1681e(b))**

108.   Plaintiff re-alleges and incorporates all other factual allegations set forth in this Complaint.

109.   Defendants violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports furnished regarding Plaintiff.

110.   Defendants reported information that they had reason to know was inaccurate.

111.   Defendants knew or should have known about their obligations under the FCRA.  These obligations are well established in the plain language of the FCRA, in the promulgations of the Federal Trade Commission, and in well-established case law.

112.   Defendants obtained or had available substantial written materials that apprised them of their duties under the FCRA.

113.   Despite knowing of these legal obligations, Defendants acted consciously in breaching their known duties and deprived Plaintiff of her rights under the FCRA.

114.   As a result of their violations of 15 U.S.C. § 1681e(b), Plaintiff has suffered, and continues to suffer, actual damages, lost opportunity to receive credit,

economic loss, damage to reputation, reduction in credit score, invasion of privacy, emotional distress, and interference with normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury.

115.   The violations by Trans Union, Experian and Equifax were willful, rendering them liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, Trans Union, Experian and Equifax were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

116.   Plaintiff is entitled to recover attorney fees pursuant to 15 U.S.C. §1681o(a) or, alternatively, 15 U.S.C. 1681o(a).

**FOURTH CLAIM FOR RELIEF**

**(against Trans Union)**

**(15 U.S.C. § 1681i(a)(5))**

117.   Plaintiff re-alleges and incorporates all other factual allegations set forth in this Complaint.

118.   Trans Union violated 15 U.S.C. § 1681i(a)(5)(B) by failing to provide Plaintiff with a "(I) a statement that the disputed information has been reinserted; (II) the business name and address of any furnisher of information contacted and the telephone number of such furnisher, if reasonably available, or of any furnisher of information that contacted the consumer reporting agency, in connection with the

reinsertion of such information; and (III) a notice that the consumer has the right to add a statement to the consumer's file disputing the accuracy or completeness of the disputed information."

119.   Trans Union further violated 15 U.S.C. § 1681i(a)(5)(C) by failing to "maintain reasonable procedures designed to prevent the reappearance in a consumer's file, and in consumer reports on the consumer, of information that is deleted pursuant to this paragraph (other than information that is reinserted in accordance with subparagraph (B)(i))."

120.   Trans Union knew or should have known about its obligations under the FCRA.  These obligations are well established in the plain language of the FCRA, in the promulgations of the Federal Trade Commission, and in well-established case law.

121.   Trans Union obtained or had available substantial written materials that apprised it of its duties under the FCRA.

122.   Despite knowing of these legal obligations, Trans Union acted consciously in breaching its known duties and deprived Plaintiff of her rights under the FCRA.

123.   As a result of its violations of 15 U.S.C. § 1681i(a)(5), Plaintiff has suffered, and continues to suffer, actual damages, lost opportunity to receive credit,

economic loss, damage to reputation, reduction in credit score, invasion of privacy, emotional distress, and interference with normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury.

124.   The violations by Trans Union were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, Trans Union was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

125.   Plaintiff is entitled to recover attorney fees pursuant to 15 U.S.C. §1681o(a) or, alternatively, 15 U.S.C. 1681o(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

On the First Claim for Relief:

1.   Actual damages to be determined by the jury, or statutory damages of $100 to $1,000 to be determined by the jury;

2.   Punitive damages to be determined by the jury;

3.   Attorneys' fees; and

4.   Costs of the action.

On the Second Claim for Relief:

1.      Actual damages to be determined by the jury, or statutory damages of $100 to $1,000, to be determined by the jury;

2.      Punitive damages, to be determined by the jury;

3.      Attorneys' fees; and

4.      Costs of the action.

On the Third Claim for Relief:

1.      Actual damages to be determined by the jury, or statutory damages of $100 to $1,000, to be determined by the jury;

2.      Punitive damages, to be determined by the jury;

3.      Attorneys' fees; and

4.      Costs of the action.

On the Fourth Claim for Relief:

1.      Actual damages to be determined by the jury, or statutory damages of $100 to $1,000, to be determined by the jury;

2.      Punitive damages, to be determined by the jury;

3.      Attorneys' fees; and

4.      Costs of the action.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury.

DATED: March 5, 2021

By: /s/ Andrew Weiner

Jeffrey B. Sand
Ga. Bar No. 181568
Andrew L. Weiner
Ga. Bar No. 808278
WEINER & SAND LLC
800 Battery Avenue SE
Suite 100
Atlanta, GA  30339
(404) 205-5029 (Tel.)
(866) 800-1482 (Fax)
js@wsjustice.com
aw@wsjustice.com

*Counsel for Plaintiff*